UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Bankruptcy Case |
| MELISSA CLARK, | ) | No. 06-62407-aer13 |
| | ) | |
| <u>               Debtor.             </u> | ) | |
| | ) | |
| DAVID C. HOUTS and | ) | Bankruptcy Case |
| MARY C. HOUTS, | ) | No. 08-62216-aer13 |
| | ) | |
| <u>               Debtors.           </u> | ) | |
| | ) | |
| KENNETH DONALD TAYLOR and | ) | Bankruptcy Case |
| JOLEE MICHELLE TAYLOR, | ) | No. 08-62785-aer13 |
| | ) | |
| <u>               Debtors.           </u> | ) | MEMORANDUM OPINION |

The matters in each of these cases involve sanctions for an attorney's failure to disclose information mandated by the Bankruptcy Code and Rules. Due to a longstanding pattern of nondisclosure and overcharges, the court is faced with the distasteful question of whether to suspend the attorney from practicing bankruptcy law in this District.

Keith Hayes is an attorney in the mid-Willamette Valley whose bankruptcy practice includes the representation of consumer debtors in Chapter 13 cases. Mr. Hayes represents the debtors in each of these

MEMORANDUM OPINION-1

cases. In <u>Houts</u> and <u>Taylor</u>, the United States Trustee (UST) has filed a motion under 11 U.S.C. § 329[1] to examine Mr. Hayes' attorney's fees. In <u>Houts</u> and <u>Clark</u>, the court has issued an order to show cause why various sanctions should not be imposed and why Mr. Hayes should not be suspended from practice before this court for a period of up to 180 days. The matters were heard on February 11, 2009. The court's findings of fact and conclusions of law are set out below.

<u>In re Houts: Case # 08-62216-aer13</u>:

David and Mary Houts filed a Chapter 13 petition on June 24, 2008. Mr. Hayes' fee disclosure statement and application filed on Local Bankruptcy Form (LBF) #1305 indicated he was charging a flat fee of $4,000 for the entire case, $300 of which had been paid leaving $3,700 to be paid through the Chapter 13 plan.[2] Mr. Hayes did not attach his fee agreement to LBF #1305, even though the form stated he had. Due to this deficiency, on September 10, 2008, the UST filed a motion under § 329(b) to reduce fees, citing a history of similar failures. On October 1, 2008, Mr. Hayes filed an amended LBF #1305, this time with his fee agreement attached. The Houts' modified Chapter 13 plan was eventually

---

[1] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code.

[2] In this District all Chapter 13 debtor's attorneys must file LBF #1305 which is entitled "Debtor's Attorney's Disclosure of Compensation and Any Employment Agreement, and Application for Compensation under 11 USC § 329 and FRBP 2016(b)." The form allows debtor's counsel to pick Schedule 1 indicating a flat fee for the entire case, or Schedule 2 indicating either a flat fee or an estimated hourly fee, through plan confirmation and the initial claims audit. Under Schedule 2, the attorney must request post-confirmation fees (beyond the initial claims audit) through a supplemental fee application.

MEMORANDUM OPINION-2

confirmed, an award of attorney's fees was abated pending resolution of the instant matters.

### In re Taylor: Case # 08-62785-aer13:

Kenneth and Jolee Taylor filed their Chapter 13 petition on July 30, 2008. Mr. Hayes' initial LBF #1305 indicated a flat fee of $4,000 for the entire case, with $300 previously paid leaving $3,700 to be paid through the plan. Again, the form stated the fee agreement was attached when it was not. On October 1, 2008, the UST advised Mr. Hayes, by letter, of this deficiency. At the first confirmation hearing on October 21, 2008, the UST appeared and again advised Mr. Hayes that an amended LBF #1305 was necessary. Mr. Hayes requested time to file the amended disclosure. The court gave the Taylors 21 days to file an amended plan. The LBF #1305 issue was setover. The UST was ordered to file a formal motion within 21 days.

On November 10, 2008, the UST filed the present motion under § 329(b). A hearing on confirmation of the Taylor's modified plan and the UST's motion was set for January 21, 2009. Approximately three hours before the hearing, Mr. Hayes filed an amended LBF #1305, this time attaching his fee agreement.[3] The Taylors' second modified plan has since been confirmed with an award of fees abated pending resolution of the UST's motion.

### In re Clark: Case # 06-62407-aer13:

Perhaps Mr. Hayes' disclosure problems began when Melissa Clark filed her Chapter 13 petition on November 22, 2006, more than a year and

---

[3] Only Ms Taylor signed the fee agreement.

MEMORANDUM OPINION-3

a half before the Houts or Taylor petitions. These problems became compounded when Mr. Hayes failed to cooperate with a UST audit and failed to timely file a motion to retain a tax refund or amended plan on his client's behalf.

At the time Ms Clark filed her case, Mr. Hayes was a "network" provider under a legal insurance plan underwritten by ARAG, North America, Inc. (ARAG). Ms Clark was an insured under the ARAG policy. Under the insurance plan, ARAG would pay Mr. Hayes a flat fee of $750 for all services through plan confirmation.[4] Mr. Hayes could not charge Ms Clark more. Further, Mr. Hayes was obligated to discount his regular fee by 25% for any post-confirmation services.

Mr. Hayes' initial LBF #1305 filed on December 5, 2006, indicated a flat fee of $4,000 for the entire case, with $750 received, leaving $3,250 to be paid through the plan. Ms Clark's Chapter 13 plan indicated fees consistent with LBF #1305.

The case was selected for an audit.[5] On December 11, 2006, the UST's office mailed a letter to Mr. Hayes advising him of the audit, what documents must be provided to the auditor, the auditor's name and the auditor's location. After having not received any of the requested information, on January 3, 2007, the auditor sent a follow-up letter to Mr. Hayes. The UST's counsel also telephoned Mr. Hayes on January 22, 2007. In that conversation, Mr. Hayes advised that he thought all of the requested documents were in his possession but that he had misplaced the

---

[4] Under the ARAG contract, the flat fee through confirmation increased to $1,100 for cases filed on or after July 1, 2007.

[5] See, 28 U.S.C. § 586(f)(1)(UST may contract out case audits).

MEMORANDUM OPINION-4

initial audit letter. That day, the UST's counsel faxed another copy of the initial audit letter. The confirmation hearing was held on January 23, 2007. Counsel for the UST appeared and advised that the information requested by the auditor had still not been provided. Counsel agreed that the plan could be confirmed subject to objection by any party in interest within 30 days of the audit report being filed or certification that it could not be completed. On January 23, 2007, the confirmation order was entered with the above language. The order allowed Mr. Hayes $4,000 in fees, with $3,250 to be paid through the plan.

On or about January 29, 2007, the auditor had a phone conversation with Mr. Hayes' legal assistant. Mr. Hayes' assistant advised the auditor that he had received the documents from Ms Clark and inquired as to whom he should direct the bill for the copying charges. The auditor replied that she was not responsible for the copying charges and that the bill should be directed to Ms Clark. On February 8, 2007, the auditor made a follow-up call to Mr. Hayes and left a message. Having still not received any documents by February 13, 2007, the auditor filed a "no audit" report. That day, Mr. Hayes' office sent the requested documents by priority mail to the auditor, who received them on February 15, 2007. The auditor then forwarded the documents to the UST's office. In the interim, the UST filed a motion to vacate confirmation and dismiss for failure to cooperate with the audit; however, after receiving the documents via the auditor's office, the UST's office conducted its own internal audit, and determined Ms Clark had not made any material misrepresentations. As such, it withdrew its motion to dismiss.

MEMORANDUM OPINION-5

The UST did, however, move to examine Mr. Hayes' fees under § 329(b). The UST argued Mr. Hayes failed to discharge a portion of his duties, by failing to timely forward the documents responsive to the audit, thereby placing Ms Clark's confirmed plan in jeopardy. Moreover, Mr. Hayes' recalcitrance caused unnecessary work by the auditor and UST. It argued Mr. Hayes should have forwarded the documents and determined who would pay the costs later. His attempt to hold the documents hostage for nominal copying charges was unreasonable and unjustified under the circumstances. Although the UST believed a significant sanction was warranted, it nonetheless recommended only a $300 fee reduction because the audit procedure was new and this was Mr. Hayes' first offense.

Mr. Hayes did not respond to the UST's motion. A hearing was convened on October 3, 2007. The motion was granted. Mr. Hayes' fees were reduced by $300 by order entered on October 11, 2007.

On July 16, 2008, the case trustee moved to dismiss Ms Clark's case based on her failure to submit her 2007 tax refunds to the plan. A hearing on the motion was held on October 21, 2008. At that hearing, Mr. Hayes advised that Ms Clark had spent her 2007 federal refund on car repairs. The court gave Ms Clark until October 28, 2007, to file a motion to retain the refund, which Mr. Hayes subsequently failed to file on Ms Clark's behalf. At the October 21st hearing, Mr. Hayes disclosed, for the first time, that the case involved legal insurance. On October 22, 2008, the present order to show cause re: sanctions/suspension was entered.

The show cause hearing on sanctions was held on February 11, 2009. By that time, Mr. Hayes had received all the fees awarded in the

MEMORANDUM OPINION-6

Case 08-62216-aer13    Doc 46    Filed 03/26/09

case.[6]  Three and a half hours before the sanctions hearing, Mr Hayes filed an amended LBF #1305, which indicated he was charging a flat fee of $750 through confirmation and the initial claims audit, and added: "ARAG legal insurance pays $750.00 See attached addendum for specifics."  An undated fee agreement was attached.  It indicated $750 would be paid by ARAG upon plan confirmation for pre-confirmation services.  Post-confirmation services would then be billed at a 25% discount and paid through the plan [by the case trustee from Ms Clark's plan payments] upon court approval.

Other Cases:

These three cases are the proverbial tip of the iceberg with regard to Mr. Hayes' disclosure problems.  Attached as Appendix A and incorporated herein is this court's opinion in In re Addison, 2008 WL 1902429 (Bankr. D. Or. April 25, 2008) which discusses three other cases where Mr. Hayes' was sanctioned for similar violations.  Further, the court takes judicial notice of In re Smith, Case # 07-62343-aer, another case involving Mr. Hayes' failure to disclose the material terms of his legal insurance contract.[7]  The court also takes judicial notice of three

---

[6] Those fees being $750 from ARAG and $2,950 through the plan (i.e. $3,250 originally awarded in the confirmation order minus $300 per the October 11, 2007, sanctions order).

[7] Jamie and Russell Smith filed their Chapter 13 petition on August 19, 2007.  Mr. Hayes' original LBF #1305 indicated a flat fee of $4,000 for the whole case, with $2,900 remaining to be paid through the Chapter 13 plan.  It indicated his fee agreement with the Smiths was attached when in fact it was not. The plan listed the same fees paid and remaining. On October 28, 2007, Mr. Hayes amended his LBF #1305 to provide for a flat fee of $1,100 through confirmation and the initial claims audit.  The form did not indicate whether the fees had been paid or not. Again, the fee agreement was not attached although the form represented it was. On November 21, 2007,  the plan was
(continued...)

MEMORANDUM OPINION-7

cases, In re Hampton, Case # 07-62774-fra13 (filed October 3, 2007); In re Fidler, Case # 07-60562-fra13 (filed March 6, 2007); and In re Kendall, Case # 06-62585-fra13 (filed December 14, 2006).

In all three cases:

> 1) Mr. Hayes' LBF #1305 requested a flat fee of $4,000 for the entire case, and did not disclose the existence of legal insurance;
>
> 2) A Chapter 13 plan was confirmed. In the confirmation order the court awarded fees of $4,000, of which $3,250 (Fidler and Hampton) and $4,000 (Kendall) was to be paid through the plan;
>
> 3) The case trustee subsequently discovered the existence of legal insurance and moved to examine Mr. Hayes' fees under § 329;
>
> 4) Mr. Hayes continued to collect fees through the plan based on the original award;
>
> 5) A series of hearings was held. In November, 2008, Mr. Hayes was ordered to amend his LBF #1305 and file an application for supplemental

---

[7](...continued)
confirmed. The confirmation order provided that the total fees were $1,100, with $0 to be paid through the plan, and that ARAG legal insurance would pay the fees. The confirmation order was the first disclosure of any legal insurance.

On April 14, 2008 the court received a letter from the Smiths indicating that under their fee agreement, Mr. Hayes would represent them through confirmation and they would be representing themselves post confirmation. They wanted in any event to terminate Mr. Hayes' employment because he "never returns calls . . ., is late filing paperwork and doesn't handle business in a professional manner . . . ." The Smiths' fee agreement was attached. It provided that ARAG would pay $1,100 upon confirmation as payment for services through confirmation, and that post-confirmation services would be billed at $225/hour "to be negotiated and paid prior to any necessary work beyond confirmation of the plan." This billing rate did not appear to be consistent with the 25% discount Mr. Hayes was required to give for post-confirmation services on other ARAG cases. The court convened a hearing on June 17, 2008. Mr. Hayes appeared and advised the case was filed before he was aware of the required 25% discount and before the Addison decision was entered. A minute order was entered on June 18, 2008, terminating Mr. Hayes' employment.

MEMORANDUM OPINION-8

> compensation, both by December 12, 2008, and file a report of all other cases where LBF #1305 failed to disclose the case involved legal insurance, by December 31, 2008;
>
> 6) Mr. Hayes failed to amend his LBF 1305, file a supplemental application, or file the requisite report;
>
> 7) After hearing, orders were entered in late January, 2009, allowing Mr. Hayes to keep what ARAG had paid him but requiring him to disgorge, to the case trustee, by April 20, 2009, all fees he had received from trustee payments.

Finally, the court takes judicial notice of In re Erwin, # 08-60057-fra13, again involving Mr. Hayes, but this time concerning his failure to properly account for monies refunded to his office by the case trustee in a prior Chapter 13 case filed by his clients. There, Mr. Hayes failed to provide the case trustee with requested information or abide by a court order to provide an accounting of the subject refund. As a result, the court entered an amended order on September 3, 2008, barring Mr. Hayes from filing new cases starting August 29, 2008, until his then-pending Chapter 13 cases were either confirmed, converted or dismissed.

Discussion:

There are two principal matters before the court: 1) whether Mr. Hayes' fees should be reduced; and 2) whether he should be suspended from practice before this court.

Fee Reduction/Denial:

The disclosure standards for a debtor's attorney in bankruptcy were discussed at length in Addison.

Debtors' attorneys are ... subject to the
requirements of § 329, which requires that any
attorney representing a debtor file "a statement
of the compensation paid or agreed to be paid"
for bankruptcy services, if any payment or
agreement was made within a year before
bankruptcy, and "the source of such
compensation." § 329(a). Counsel must file this
statement whether or not the attorney applies to
the court for compensation. Rule 2016
implements this requirement, and provides that
counsel for a debtor must file, within 15 days
of the order for relief, the statement required
by § 329. Fed. R. Bankr.P. 2016(b).

In disclosing the fee arrangement, "the
applicant must disclose 'the precise nature of
the fee arrangement,' and not simply identify
the ultimate owner of the funds." *In re Park-Helena Corp.,* 63 F.3d 877, 881 (9th Cir.1995).
An applicant must lay bare all its dealings ...
regarding compensation .... [The] fee
revelations must be direct and comprehensive.
Coy, or incomplete disclosures ... are not
sufficient. *Id.* (quoting *In re Saturley,* 131
B.R. 509, 516-517 (Bankr.D.Me.1991)).

The disclosure requirements allow oversight of
fee arrangements between debtors and their
counsel. "Section 329(a) seeks to prevent
overreaching by debtor's attorneys and serves to
counteract the temptation of a failing debtor to
deal too liberally with his property in
employing counsel to protect him in view of
financial reverses and probable failure." *In Re
Perrine,* 369 B.R. 571, 579-580
(Bankr.C.D.Cal.2007) (internal quotations
omitted).

  The disclosure rules are literally applied,
and "[n]egligent or inadvertent omissions 'do
not vitiate the failure to disclose.'" *Park
Helena Corp.,* 63 F.3d at 881 (quoting *In re Maui
14K, Ltd .,* 133 B.R. 657, 66
(Bankr.D.Haw.1991)). Failure to comply with the
disclosure rules is sanctionable, "even if
proper disclosure would have shown that the
attorney had not actually violated any
Bankruptcy Code provision or any Bankruptcy
Rule." *Id.* at 880.

MEMORANDUM OPINION-10

Addison supra, 2008 WL 1902429 at *4 (quoting in part In re Farrington, 2007 WL 4365753, *4 (Bankr. D. Or. Dec. 11, 2007)). "It is no excuse that the attorney receives some or all of his fees from a third party . . . ." Addison supra 2008 WL 1902429 at *4. "All pertinent information should be set forth on LBF 1305." Id.

As with Addison, in the three cases at bar, Mr. Hayes' disclosure deficiencies permeate the proceedings. In Taylor and Houts his original LBF #1305s were incomplete in that they did not attach his fee agreement with his clients. Corrective amendments filed after motions to disgorge and, in Taylor, just hours before hearing, are of little merit. Taylor and Houts were filed months after this court's opinion in Addison sanctioning Mr. Hayes for identical conduct.

Mr. Hayes' failures in Clark are more serious. Mr. Hayes' normal (non-discounted) fee for a Chapter 13 case was a flat $4,000 for the entire case. In Clark, his initial LBF #1305 reflected this flat fee, with $750 paid and $3,250 to be paid through the plan. This clearly misrepresented the true arrangement with ARAG and his client. The LBF #1305 did not mention ARAG, reflect the required 25% post-confirmation discount or the $750 cap on pre-confirmation fees. At the February 11, 2009, hearing, Mr. Hayes claimed that he had initially failed to scrutinize the ARAG plan and was unaware of the required 25% discount. Later, in some of his cases, he started listing the ARAG payment on Schedule 2 of LBF #1305, as a flat fee through confirmation, with post-confirmation fees to be applied for through supplemental applications

MEMORANDUM OPINION-11

with the 25% discount disclosed.[8] That was evidently done in Clark through an amended LBF #1305. This, however, was much too little, much too late.

First, Mr. Hayes' claimed initial ignorance of the 25% discount does not excuse his failure to disclose the $750 cap on pre-confirmation fees, of which he was clearly aware. Second, even assuming Mr. Hayes' initial ignorance, once he became aware he did not timely amend his disclosures as was his duty.[9] In re Perrine, 369 B.R. 571, 579 (Bankr. C. D. Cal. 2007) (disclosure duties are continuing, citing FRBP 2016(b)). Instead he waited until October, 2008, to disclose the existence of legal insurance and then until hours before the sanctions hearing in February, 2009, to amend LBF #1305. In the meantime, as he had in numerous other cases,[10] even though he knew his prior fee awards were based on a misrepresentation, he collected full "non-discounted" fees through the plan. The court finds this perhaps the most troubling aspect of this case.[11]

---

[8] At the February 11th hearing, Mr. Hayes represented that once he became aware of the required discount he thought he could simply apply the discount to his flat fee or alternatively to the "post-petition" portion (the remainder after deducting ARAG's pre-confirmation payment) thereof. He reported however that the Hon. Frank. R. Alley of this court advised him in another case that this would be like "fitting a square peg into a round hole." Judge Alley then suggested listing the ARAG fee on Schedule 2 of LBF #1305.

[9] From the record before me, at the latest Mr. Hayes was on notice of the required discount in January, 2008. Addison supra, 2008 WL 1902429 at *2, n.5.

[10] See e.g., Fidler, Hampton, and Kendall, supra.

[11] The court finds Mr. Hayes' argument that he did not carefully read his contract with ARAG to be suspect.

MEMORANDUM OPINION-12

Regarding <u>Houts</u> and <u>Taylor</u>, because Mr. Hayes' only transgression was his failure to attach his fee agreement to LBF #1305, I will adopt the UST's recommended $500 fee reduction in each case.[12] If more than that amount is still owing, no disgorgement is necessary.

In <u>Clark</u>, the case trustee recommended limiting Mr. Hayes' fees to those received from ARAG ($750) and denying (and ordering the disgorgement of) all fees paid through the plan ($2,950) by April 20, 2009. The court's show cause order allows for denial/disgorgement of all fees. At the February 11th hearing, Mr. Hayes apologized to the court and parties for his conduct. He advised that he did not expect his amended LBF #1305s to influence the court.[13] He admitted being dilatory in dealing with his client's 2007 tax refund. Since <u>Clark</u> involves more serious disclosure violations, the prior order awarding fees will be vacated and all fees will be denied. Mr. Hayes will be ordered to disgorge $2,950 to the trustee and $750 to ARAG by April 20, 2009, without prejudice to any claims the debtor might have to these funds.

<u>Suspension</u>:

Before the court in <u>Clark</u> and <u>Houts</u> are orders to show cause why Mr. Hayes should not be suspended from practice before this court for a period up to 180 days. In <u>In re Brooks-Hamilton</u>, __ B.R. __, 2009 WL

---

[12] The UST also requested an order requiring Mr. Hayes to file an amended LBF #1305 within 5 days of the order's entry. In <u>Houts</u>, the UST also recommended a $50/day penalty for failure to comply with any such order. Contrary to the UST's argument at the February 11th hearing, the UST's motion requested the $50/day run from the entry of an order, not from the date the motion was filed. As noted, Mr. Hayes has since filed an amended LBF #1305.

[13] Mr. Hayes revealed at the February 11th hearing that the fee agreement attached to the amended LBF #1305 in the <u>Clark</u> case was in fact a "corrected" agreement.

MEMORANDUM OPINION-13

226002 (9th Cir. B.A.P. Jan. 21, 2009), the Bankruptcy Appellate Panel re-affirmed a bankruptcy court's power to suspend an attorney. The court noted three sources of such power: 1) inherent; 2) § 105; and 3) FRBP 9011. Id. at 2009 WL 226002,*5-*8. The bankruptcy court must apply the American Bar Association Standards[14] in determining what is reasonable discipline. Id at 2009 WL 226002, *10. The standard of proof in disciplinary proceedings is "clear and convincing." Peugeot v. United States Trustee (In re Crayton), 192 B.R. 970, 975 (9th Cir. B.A.P. 1996).

Under the ABA Standards, to determine an appropriate sanction, the court should consider:

> (1) whether the duty violated was to a client, the public, the legal system or the profession; (2) whether the lawyer acted intentionally, knowingly or negligently; (3) whether the lawyer's misconduct caused a serious or potentially serious injury; and (4) whether aggravating factors or mitigating circumstances exist.

Brooks-Hamilton, supra at 2009 WL 226002, *10 (citing Crayton supra at 980).

The threshold inquiry is whether a duty was violated. In United States Trustee v. Lynn (In re Bellows-Fairchild), 322 B.R. 675 (Bankr. D. Or. 2005) the court permanently enjoined an attorney from practicing in bankruptcy court for violating his duty to accurately and completely prepare the debtor's schedules and statement of financial affairs. Similarly, in Brooks-Hamilton, supra the trial court based a six month suspension on a finding under FRBP 9011, that an objection to claim was

---

[14] ABA Standards for Imposing Lawyer Sanctions (as amended in 1992) (ABA Standards).

MEMORANDUM OPINION-14

frivolous and filed for an improper purpose.[15] Here, in all three cases, Mr. Hayes violated duties to his client, other parties in interest and the court. He either filed incomplete disclosures (Houts and Taylor) or inaccurate and misleading disclosures (Clark), in violation of his duties under § 329(a) and FRBP 2016. He failed to timely correct them by supplementing the LBF #1305s. FRBP 2016(b); Oregon Rule of Professional Conduct (ORPC) 3.3(a) ("a lawyer shall not knowingly . . . fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer");[16] see also, ABA Model Rule of Professional Conduct (MRPC) 3.3(a) (same). Further, it appears that in Clark, Mr. Hayes charged and collected a clearly excessive fee in violation of ORPC 1.5(a) and MRPC 1.5(a).[17]

The court's next inquiry concerns Mr. Hayes' mental state at the time of the misconduct. Under the ABA Standards, an attorney can act "intentionally," "knowingly," or "negligently." "'Intent' is the conscious objective or purpose to accomplish a particular result." ABA Standards (Definitions).[18] "'Knowledge' is the conscious awareness of

---

[15] The Appellate Panel remanded because the trial court did not consider the ABA standards in determining the extent of the sanction; however, it upheld the finding that some discipline was appropriate.

[16] Under former LBR 9010-1.A.1.a (in effect until August 8, 2008) (incorporating LR 83.7(a)), and present LBR 9010-1(a)(2)(A)(incorporating same), attorneys practicing before this court must comply with the standards of conduct required of members of the Oregon State Bar.

[17] By not cooperating in the audit and by neglecting matters concerning the 2007 tax refund, Mr. Hayes also violated ORPCs 1.1 (a lawyer shall provide competent representation) and 1.3 (a lawyer shall not neglect a legal matter). See also, MRPCs 1.1 (same) and 1.3 (same).

[18] In In re Conduct of Campbell, 345 Or. 670, 687, __ P.3d __ (2009), the
(continued...)

MEMORANDUM OPINION-15

the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards (Definitions). "'Negligence' is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." ABA Standards (Definitions). For the reasons stated in the above section on fee reduction, the court finds that Mr. Hayes' conduct with regard to his fee disclosures was at least "knowing." Further, the court is clearly convinced that his failure to timely rectify those omissions, and his receipt of an excessive non-discounted fee in Clark were also, at least, "knowing."

Next, the court examines whether Mr. Hayes' misconduct caused a serious or potentially serious injury. "'Injury' is harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." ABA Standards (Definitions). Here, Mr. Hayes' conduct caused serious injury. His non-disclosures seriously undermined the integrity of the bankruptcy system. Lynn, supra at 682. In Clark, his initial fee award was based on a misleading representation, which avoided the oversight § 329 and FRBP 2016 are designed to promote. Addison, supra at *4. His collection of excess fees seriously injured both Ms Clark and her creditors.

---

[18](...continued)
Oregon Supreme Court held a finding of "intentional" conduct required a showing that the result the accused intended was not the act taken but the harmful (to others) or beneficial (to the accused) effect of that act.

MEMORANDUM OPINION-16

Finally, the court must consider whether aggravating factors or mitigating circumstances exist. Aggravating factors are "considerations or factors that may justify an increase in the degree of discipline to be imposed." ABA Standard 9.21. Here, multiple aggravating factors are present, including a dishonest or selfish motive, multiple offenses and a pattern of misconduct. ABA Standards 9.22(b),(c) and (d). Mitigating factors are "considerations or factors that may justify a reduction in the degree of discipline to be imposed." ABA Standard 9.31. "Remorse" is a mitigating factor. ABA Standard 9.32(l). While Mr. Hayes' remorse, if sincere, is commendable, it came only after the UST and case trustee were forced to intervene and then only at the sanctions hearing itself. His remorse might have carried more weight had it been at an earlier stage of the proceedings.[19]

Conclusion:

Based on the above, the court determines that a suspension of 90 days is appropriate.[20] The suspension will begin 60 days from entry of the order accompanying this opinion. During the 60 day period, Mr. Hayes may not file any new bankruptcy cases. The 60 day grace period is allowed so that Mr. Hayes may take appropriate action to conclude his existing cases or find substitute counsel to represent his clients. In other words, to prevent harm to his existing clients resulting from the suspension. The above constitutes the court's findings of fact and

---

[19] Based on Mr Hayes' misleading and inaccurate disclosures described in this opinion, the court finds his last minute remorse to be suspect.

[20] See, ABA Standard 7.2.

MEMORANDUM OPINION-17

conclusions of law under FRBP 7052. An order consistent herewith shall be entered.

*Albert E. Radcliffe*

ALBERT E. RADCLIFFE
Bankruptcy Judge

MEMORANDUM OPINION-18